C. & N. W. Ry. Co. v. Holdom.

Chicago & N. W. Ry. Co. v. Jesse Holdom, Administrator of Thomas J. Droud.

1. VERDICTS—*When Not Conclusive.*—While the question as to whether a person was in the exercise of ordinary care for his own safety is one of fact, the determination thereof by the judgment of the trial court, or by the verdict of a jury upon evidence not conflicting in its character, is not binding upon this court.

2. SAME—*When to be Set Aside.*—If upon a consideration of the evidence, it is found that a judgment or verdict is clearly against the weight of evidence, and ought not as a matter of law to stand, it is not only the right, but is the duty of this court to reverse and set it aside.

3. ORDINARY CARE—*What is a Want of.*—A person who voluntarily duts his life in peril by crossing a railroad track in the face of a train running at a high rate of speed and is killed, is not in the use of ordinary care, and his personal representatives can not recover.

**Action for Damages.**—Death from alleged negligence. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the March term, 1896. Reversed. Opinion filed June 29, 1896.

A. W. PULVER, attorney for appellant; LLOYD W. BOWERS and E. E. OSBORN, of counsel.

JAMES C. McSHANE, attorney for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This action was brought by the appellee as administrator of the estate of Thomas J. Droud, deceased, to recover damages from the appellant for negligently causing the death of said Droud on the evening of April 3, 1893.

At the time of the accident Droud was a freight train conductor in the service of the appellant, and had been such for several years. In that capacity he earned from $75 to $100 per month. He was about thirty years of age, and left surviving him a widow, twenty-three years old, and a young child. The verdict was for $3,200, and judgment having been entered thereon, this appeal was allowed.

On the evening in question, Droud, having in charge a freight train, left Chicago at about half-past five o'clock bound westward for Harvard. According to scheduled time, his train was to meet the incoming east-bound St. Paul passenger train at about a quarter past eight, at a small station named Cary, at which his train would stop, but the passenger train would not. Arriving at Cary, Droud's train, which consisted of thirty or thirty-five cars, and was about one thousand feet long, was switched off upon the north side-track in front of the depot, and was stopped at a point which left the caboose standing in front of the middle of the depot, but separated therefrom by two intervening tracks, one of which was the main track, and the other, next to the depot platform, was a side-track, spoken of as the house track. In other words, the main track was the middle track at that station, and Droud's train stood upon the track farthest from the depot.

The expected passenger train was behind time, and, presumably, in order that his train should lose no more time in waiting for it than was absolutely necessary, Droud, before leaving his train to go into the depot, there to perform what his duty required of him, instructed his engineer to go along as soon as the passenger train should pass and the block or semaphore light at the depot should show it to be right to do so, and added that he would get aboard the caboose.

Droud thereupon left his train and went into the depot office, and after transacting his business sat down for a few minutes. While so sitting, the whistle of a locomotive was heard, and receiving an affirmative answer to his inquiry of the station agent and telegraph operator if it were that of the expected passenger train, he hastily picked up his lantern, inquired if there were any orders for him, and started out of the office, making the remark as he went that he must hurry to his train or he would get left.

At that time two or more cars coupled together were standing on the house track next to the depot platform, and directly in front of the office door, and they prevented Droud from crossing the tracks in a direct line to the

caboose of his train.  He therefore ran eastwardly along the platform, with his back toward the approaching train, a distance of upward of twenty feet until he could pass around the easternmost of the standing cars, and then left the platform and crossed the house track upon which the standing cars were, sprang upon the passenger platform, which was about four or five feet wide and a foot and a half high, and extended lengthwise in an east and west direction between the house track and main track a distance (as shown by the plat in evidence) of about one hundred and twenty-five feet, and, apparently without stopping to look, ran across that platform and jumped upon the main track directly in front of the swiftly coming passenger train locomotive, and was instantly struck and thrown a distance of about one hundred feet, and killed.

There is a substantial agreement in all the evidence upon the main facts of the case, as above briefly stated.

The first question that arises upon the facts is, was Droud exercising due and ordinary care for his own safety ? If he were not, there should have been no recovery.  While such is a question of fact, the determination thereof by the judgment of the trial court, or by the verdict of a jury upon evidence that is not conflicting in its character, is not binding upon this court.  If, upon a consideration of the evidence it is found that such a judgment or verdict is clearly against the weight of evidence, and ought not as a matter of law to stand, it is not only the right but is the duty of this court to reverse and set it aside.   C. & A. R. R. Co. v. Heinrich, 157 Ill. 388;  Block v. Swift, 43 N. E. Rep. (Ill. Sup. Ct.) 591.

Droud had unquestionably a duty to perform by going into the depot office, and although we do not find it so in evidence, yet it is reasonable to suppose it was his duty to remain there up to the coming of the passenger train, so as to receive the latest telegraphic orders which might be directed to him because of his train being belated.  And no fault can be imputed to him because he started hurriedly after inquiring at the last moment for telegraphic orders.

But it is plainly established that he could have have easily

seen the headlight of the approaching train if he had looked when he went out of the office upon the depot platform, and it is not known whether he looked or not; and again when he reached the passenger platform between the tracks, after he came out from behind the standing cars, he could have clearly seen it if he had looked, and it was a lamentable neglect of his own personal safety if he did not look, and if he did look it was equally neglectful by him to have run into what he must have known was certain death.

A man like Droud, possessed of familiar acquaintance with the speed of belated passenger trains, may not take desperate chances under such circumstances as he was placed in, and if he misses, throw the burden of making good the loss of his life upon him against whom he makes the leap. Neither law nor common sense can uphold such conduct.

But it is said with much pertinacity that because it was proved, and is not denied, that the passenger train was running at a much higher speed than the regular scheduled running time, Droud was excusable. In other words, that seeing, as he might have done when he left the office, the distance of the approaching train, he had a right to assume that its speed was no greater than usual, and hence that it could not reach a point of danger to him before he could cross the track. We are not prepared to say that as matter of law any right of assumption exists as to the rate of speed at which a train may be running when one is about to cross railway tracks in the presence of an approaching train. Droud knew that the train was late, for he had been accustomed to meet it at this station, and was then waiting for it to arrive and pass, in order that he might move his own train ahead.

He presumably knew, and probably was bound to know, of appellant's rule 118, which permitted belated trains to make up time by an increased speed, when by so doing schedule time could be resumed, and the passenger train not being so much behind time but that its schedule time might be resumed by increased speed, Droud must reasonably be presumed to know that it was running at a higher speed than usual.

But even though he did not so know, yet if he saw, as he might have seen, the headlight when he stepped out of the office, and was misled by its apparent distance into the thought that if the train were coming at usual speed he could cross over the tracks in advance of it, still it was sheer recklessness that caused him to come out from behind the standing cars and without stopping upon the passenger platform, where he was in a place of certain safety, to spring right into the face of the passing locomotive, of whose approach the noise and light could hardly have failed to notify him.

The argument of appellee that Droud's duty and necessity to reach his train before the passenger train had passed, was such as to bring his conduct within the rule relating to the action of a person who, brought under the sudden pressure of duty, proceeds under an error of judgment and without the circumspection required of one who acts without any such pressure upon him, does not fit the facts of this case.

There is no evidence that would justify us in assuming that it was the duty of Droud to reach his train before the passenger train went by.

True, he had instructed his engineer to pull out as soon as the passenger train should have passed, but his train was separated from the passenger platform where he last stood, by only the width of the track on which the passenger train was traveling and the additional few feet between tracks; and the few seconds of delay while the passenger train was passing could have made scarcely any difference in the time of his reaching the caboose.

It is apparent, also, that, had there been necessity for great haste by Droud, he could, instead of crossing the main track in face of the approaching train, have run westward in entire safety upon the passenger platform in the direction that his train would start, and thereby have lost practically no time, while the passenger train was going by.

We have looked faithfully at all that the evidence shows us of facts and surroundings, and can only reach the conclusion that Droud was neglectful of every reasonable precaution for his own safety, and though that be the result of

recklessness, or of want of an exercise of reasonable precaution by him, there should be no recovery against the appellant for the fatal consequences that ensued.

We quote from C., C., C. & St. L. Ry. Co. v. Arbaugh, 47 Ill. App. 360 :

" While the case is a sad one, yet the judgment must predominate over mere sympathy. The deceased should not have voluntarily and knowingly put in peril her life by attempting to cross the railroad tracks when an approaching train was so near. To do so was not only not using ordinary care, but was exceedingly reckless, and, as was unfortunately demonstrated, fatally dangerous. In the case of Ernst v. The Hudson River R. R. Co., 35 N. Y. 9, it is said : 'Where one knows of the immediate proximity of an approaching train, whether the warning by signal be given or not, and having a safe and reasonable opportunity to stop, he voluntarily takes the risk of crossing in front of it, he is guilty of culpable negligence and forfeits all claim for redress.' In the case of Railroad Co. v. Houston, 95 U. S. 697, it is said : ' If, using her senses, she saw the train coming and yet undertook to cross the track, instead of waiting for the train to pass, the consequences of her mistake and temerity can not be cast upon the defendant.' "

It is apparent that no better case could be made for appellee by another trial, and we therefore reverse the judgment without remanding the cause.