## Mutual Accident Association of the Northwest v. Robert M. Simons.

### Home Protection Aid Association v. Same.

1. VERDICT—*When Opposed to the Evidence.*—When the verdict is clearly opposed to the overwhelming evidence furnished by the plaintiff's own statement, out of court, on the vital questions at issue, the court should not hesitate to set it aside.

Assumpsit, on a policy of accident insurance. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the October term, 1896. Reversed and remanded. Opinion filed March 8, 1897.

M. B. & F. S. LOOMIS, attorneys for appellants.

CLARK VARNUM, attorney for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The two appellant associations were, at the time of the issuance of the certificates of membership sued upon, conducted under one management, and were afterward consolidated under the name of The Star Accident Company.

Appellee, a traveling salesman, residing at Lincoln, Nebraska, became a member of each of said associations, and the certificates of membership in question were issued to him at the respective dates thereof, to wit: October 10, 1888 (in the first named association), and July 30, 1890 (in the last named).

These certificates of membership, while unlike in form, were substantially alike in effect and purpose, to wit, the insuring of the member (appellee) against personal bodily injuries effected or received by or through external, violent and accidental means, producing death, or " which shall, independently of all other causes, immediately and wholly disable and prevent him " (the insured) " from the prosecution of any and every kind of business," etc. Each certificate contains a condition to the effect that immediate notice of any accidental injury for which claim may be made under the certificate should be given in writing to the secretary of the association, with full particulars of the accident and injury; and that failure to give such immediate written notice should invalidate all claims under the certificate.

The facts, as disclosed by the record, show that previous to the alleged injury and disability, for which claim is now made, to wit, on or about November 4, 1891, appellee presented a claim against appellants, under these same certificates, for twelve weeks and six days disability on account

of a similar injury claimed to have been received by him on August 6, 1891, in getting off a freight train which started up suddenly, throwing him off and spraining his left foot, and breaking some of its bones. From the disability so suffered by him he recovered, and resumed his usual occupation on November 5, 1891; and he was paid the full amount of his claim, $642.86, by the appellants.

From that time he continued to follow his occupation for about four months, when, as he claims, he was again injured and suffered the disability for which these suits were brought.

Separate suits against each of the appellants were brought, but by agreement of parties the causes were consolidated and tried together, with the result of a separate verdict and judgment against each of the appellants for the same amount, $1,433.39.

The manner of receiving the injury is stated by the appellee in each declaration, as follows: "As he was about to step off a street car or cable car, in the city of Omaha, in the State of Nebraska, on said date (March 2, 1892), the said street and cable car suddenly starting (started) up, causing the said plaintiff to be quickly, violently and accidentally thrown therefrom on the ground, causing a severe bruise and injury to the foot of the plaintiff," etc.

The evidence shows plainly enough that the appellee suffered disability from about the alleged date of March 2, 1892, for a period exceeding the number of weeks covered by the insurance policies, and there would not seem to be any question but that the amount recovered by him is proper, if under the evidence he could recover at all.

The appellee went from Omaha to his home, in Lincoln, on March 4th, and on the next day called a physician.

On March 7th the appellee sent a notification to the appellees, as follows:

"LINCOLN, NEBRASKA, March 7, 1892.

T. S. Quincey, Sec'y Star Accident Insurance Company of the Northwest, and Home Protection Aid Association, Chicago.

DEAR SIR: This is to notify you that I was ordered by

Mut. Accident Ass'n of the Northwest v. Simons.

my physician, Dr. R. E. Giffen, of Lincoln, Nebraska, to stop work and lay up from all duties entirely, and to keep off my feet, on account of having sprained the metatarsus bone of my right foot, caused by favoring my left foot that was injured, and walking on it in relation to my duties as a commercial traveler. I have been confined to the house and room since Saturday, March 5th, and can not say when I will be able to resume my duties. Am under Dr. Giffen's care and unable to work, or even walk.

Yours very truly,

ROBERT M. SIMONS."

It will be observed that he there makes no mention of being thrown from the car, but states the injury as having been caused by favoring his left foot, which was the foot that was broken in the accident of August 6, 1891.

Responding to such notification, the appellants sent to appellee their usual printed form, containing a list of questions, which, together with his answers, he returned to the appellants on March 14, 1892.

The form and questions and answers were as follows :

" Office of the

MUTUAL ACCIDENT ASSOCIATION OF THE NORTHWEST

and the

HOME PROTECTION AID ASSOCIATION.

The following questions are simply preliminary. You will please answer them fully and return same to this office, when, according to the circumstances, you will be mailed blanks for final proof, or be notified that the association has no liability for indemnity.

1. Under what circumstances did the accident occur? Give a full description of the time, place, cause, and those who witnessed the circumstances.

(NOTE: The more complete this report the sooner the association can take action on your case. Facts left out of this report must necessarily be ascertained through other means by the company.)

Injured August 5, '91. Ruptured left foot; went to work November 5, but was lame and had to use brace and anklet

on foot and use a cane; attended by physician ever since, and on March 5th, physician ordered me to lay off on account of the metatarsal bone of my right foot being sprained and my heel being bruised from walking on said foot, caused by my being so lame from injury to left foot, and am not able to attend to my business of commercial traveler.

2. When did you call a physician; who was he; what his address, and what did he do for you?

Dr. R. E. Giffen, Lincoln, Nebraska. Use proper remedies and keep perfectly quiet and off foot.

3. Are you totally disabled—confined to your house—and if so, how long have you been in this condition; or is your injury of such a nature that you are but "partially" disabled, permitting you to attend to a portion of your business?

(NOTE: Injuries to the foot, ankle, knee, hip or shin, unless the patient gives the same absolute rest until authorized by the company's representative to use the same, will not be considered. The company does not enforce the "total disability" clause; that is, confinement to the house, for injuries received to other portions of the body. It will be readily seen that a man with a broken arm could, without injury to the same, go to his place of business, while with an injured lower limb he would be contributing to the disability.)

Yes; am totally disabled, and can not walk, as my business of commercial traveler compels me to be able to walk.

Dr. Giffen can give you full particulars, as he has attended me since I was hurt.

4. What are the external and visible signs, and their location?

Dislocation, swelling and soreness in right foot.

5. Please state what, in the opinion of your physician and yourself, will be the duration of "total" disability?

Can not say; but will get well as soon as possible; am following physician's directions minutely.

6. What other accident insurance do you carry?

Iowa State.

7.  Under what occupation is your policy written ?
Commercial traveler.

8.  Under what occupation were you employed at the time of receiving the injury ?
Same.

9.  Were you a member in good standing when accident occurred ?
Yes.

> (Signature. Full name.)    ROBERT M. SIMONS.
>
> Address, 1721 C street, Lincoln, Nebraska.

Employed by W. F. McLaughlin & Co.   Address, Chicago, Ill.   March 14, 1892."

On March 12, 1892, the appellee wrote to the secretary of the Iowa State Traveling Men's Association (which we assume to be the same association that was, in his answer to question No. 6, described as the " Iowa State "), a letter of which the following is a part:

> " LINCOLN, NEB., March 12, '92.
>
> FRIEND HALEY :  Your letter received and contents noted, and I must say I can not see why I would not be entitled to indemnity, as I never would have had the other lame and sore foot had I not been injured; and it is all caused from that foot and me having to follow my vocation as a commercial traveler.   I have no disease in my foot, and all is clearly from an accident, and I can not see how the board of directors can construe it otherwise.   Has a man got to be about killed to constitute an accident ?
>
> I can clearly prove the cause of my again being laid up as to be from former accident.   Please send me proper blank, and when I am well will fill it out.   Understand me, friend Haley, I do not want a cent that I am not entitled to—my being laid up is clearly from the result of an accident and nothing else.   *   *   *
>
> R. M. SIMONS."

Again, on April 10, 1892, appellee wrote to the secretary of another accident association at Utica, N. Y., in which he was insured in February, 1892, as follows:

"LINCOLN, NEB., Apr., 10, 1892.

Edward Treviott, Esq., Secretary, etc., Utica, New York.

DEAR SIR : This is to inform you that on March 5th, I was ordered to lay up, and have been totally disabled ever since and unable to work on account of having sprained my right foot and heel and having a stone bruise in same. How I done it I can not say, but as I will no doubt be confined for some time, thought best to notify you. My physician is Dr. R. E. Giffen, Lincoln, Neb.

Respectfully yours,

ROBERT M. SIMONS."

And on or about April 25, 1892, appellee sent to the Utica association a preliminary statement, wherein in response to the questions "Where did the accident occur?" "When did the accident occur?" and "How did the accident occur?" he answered to each, "I can not say."

Along with the statement to the Utica association, he also sent an affidavit by his physician, Doctor Giffen, sworn to on April 25, 1892, wherein the latter says, "that I was called on the 4th day of February, 1892, to see Mr. R. M. Simons, and that I found him suffering from periostitis of the oscalsis, caused by a bruise on the heel," etc.

All of these statements negative, in one form or another, the claim of appellee, made in his suits, that he suffered a fresh injury on March 2, 1892, by being thrown from a street car.

So far as we are able to discover in the record, no notice to the appellants, or either of them, that the injury from which the appellee, suffered, was occasioned by being thrown from a cable car, was given until February 17, 1893, which was only a few days before he began suit.

Under date of February 16, 1893, the appellee furnished to appellants his final proof of claim for indemnity, and therein, for the first time, set forth under oath, "that on March 2, 1892, at Omaha, Nebraska, in getting off a cable street car, the car being started up by conductor before I reached the ground, I came ( o ;n on my right heel too hard, and by so doing bruised it and thereby caused peri-

ostitis, and it finally resulted in my heel being cut open to let out the pus, and part of the heel bone was also removed, thereby causing me to lose forty-nine weeks and six days loss of time,".etc.

The appellee, when testifying at the trial, said:

"I was in Omaha, Nebraska, selling coffee. I landed in Omaha and took the car to go up to the Millard Hotel, and was lame at the time from an injury received prior to that. I was lame in the left foot.

I got up to the corner of 13th and Dodd streets, which is about 150 feet from the Millard Hotel, and signified that I wanted to get off; it is a cable road; the conductor stopped the car and I went to get off, and before I could get off he started the car, and I came down upon my right foot. I was always protecting this left foot and making the right do all the work, as far as I possibly could, because this foot was yet tender; I had hurt it seven months before, but had been working, when I got the second injury, four months between the two, after this one was pronounced well enough so I could go to work. * * * As I struck the ground on this side I partially fell on to one of my grips, and then the car started and kept right on, didn't stop or anything; when I picked myself up I could scarcely walk.

When I stepped off the car I stepped on my right foot and came down with a sharp shock, and I think I struck a cobble stone; the paving in the street was cobble stone and asphalt.

I got a terrible shock with my right foot. All my weight was on my right foot, and I had a grip in each hand, and one cane in this hand with the grip; my coffee grip, which weighed about twenty-five or thirty pounds, was in this right hand; the other one, the lighter grip, was in my left hand; my weight was upon my right side.

The right foot was injured at that time by this shock of striking it against the cobble stone or pavement. It wasn't the left foot that was injured at that time. I was always taking care of that.

I fell only partially down; rested on the grip that I had

in my right hand, my coffee grip. That was the large grip. * * *

The date of this injury was the 2d of March, 1892; it was along about three o'clock in the afternoon. I remained in the hotel until the next morning; I tried to get out and go to work; went to Council Bluffs on the electric line, but found I couldn't work and had to give up. I went to see a few of my best customers as best I could, taking a car and walking lame all day. I staid in Council Bluffs probably three hours, and in Omaha from the afternoon of the 2d until about 8 o'clock on the morning of the 4th.

I went back to Lincoln; I couldn't work and had to go home; I was too lame and in too much agony; too lame in this right heel, the one that I injured in getting off the car the day before. * * *

You see I was a very heavy man at this time. My weight at that time was two hundred and thirty pounds. I weigh now one hundred and ninety-seven, but I wear a six and one-half shoe. I weighed two hundred and thirty pounds at that time; I was overweight. * * *

During the time commencing at the time of my injury on the 2d day of March, 1892, up until the 1st of March, 1893, I was not able to perform my duties as a commercial traveler or salesman, or any part of them; I couldn't walk; I got crutches, and was on crutches for months and months and months."

There was no corroboration of appellee's account of the manner in which he claimed to have been hurt on March 2, 1891. He was seen about that time, and probably on that very day, showing indications of suffering pain, but no one saw him when he says he fell, and no one except himself says how he got hurt.

We have no wish to prejudice the appellee in another trial by commenting with harshness upon the character of the case as shown by this record, but in view of his repeated contemporaneous, deliberate and uniform statements in writing (which we have quoted), made shortly after he became disabled in March, 1892, and never varied from in any

communication to the appellants, until just before he began this suit in February, 1893, it is our plain duty to reverse the judgments he recovered.

The overwhelming weight of the evidence is opposed to his present theory of becoming freshly injured in March, 1892.

It is incredible that appellee could have made the written statements he did so near the time of the alleged accident in March, 1892, without mentioning such circumstance, if it occurred. It is altogether more probable that the painful injury suffered by him was, as he answered to question 1, in the form furnished him by the appellants, "on account of the metatarsal bone of my right foot being sprained and my heel being bruised from walking on said foot, caused by my being so lame from injury to left foot," or, as he otherwise said, in one or more of his written statements, " caused by favoring my left foot that was injured " in the preceding August, and for which he had probably settled too early.

Nor will it answer to do away with the effect of those numerous statements, as he attempts to upon his cross-examination, in the following manner:

" Q. Then when you stated to these defendant companies and to the Utica company, as well, that you had no knowledge of when you received any injury, and that you presumed it occurred from overusing your right foot, you say that was a mistake ? A. Yes, sir; that statement was.

Q. You go back on that whole thing ? A. I go back on it; yes, sir."

It is not contended by appellee that if he were not injured by the fall from the cable car as alleged in his declarations, he is entitled to sustain the judgments obtained by him.

While verdicts of juries as to facts must ordinarily be sustained, there is no rule that requires them to be upheld when they are manifestly contrary to the great preponderance of the evidence. But, on the other hand, it is our plain duty to reverse judgments that are entered upon ver-

dicts so opposed to the evidence. C. & E. R. R. Co. v. Meech, 163 Ill. 305; C. & N. W. Ry. Co. v. Holdom, 66 Ill. App. 201.

The verdict in this case was so clearly opposed to the overwhelming evidence, furnished by the appellee's own statements, on the vital question at issue, that no court should hesitate to set it aside.

The judgment is reversed and the cause remanded.